v. Flatiron 25-1140. Mr. Davis? Yes, Your Honor. May it please the Court, I would like to reserve three minutes for a rebuttal. A new trial is warranted here for four reasons, but let me set the stage quickly by highlighting two points which are uncontested by ATS. First, the JV used ATS' pre-bid design to price and schedule its winning bid. That design was prepared solely and exclusively under a contract called the Teaming Agreement. The Teaming Agreement was the only contract that existed at that time, and that's a very important point to understand for reasons I'll get to in a second. Second, there's no dispute that ATS' pre-bid design was very different from the final design. There's no dispute it was missing literally miles of piping, drainage, and other components. The road design changed. That's why. Correct. The road design changed. And had the road design not changed, then all of these piping and sheeting, drainage issues arisen. To your point, Mark, the road design changed. Yes, but it changed because the original design was deficient. The rules didn't change. The Colorado Department of Transportation requirements for the road didn't change, but the design changed materially. It virtually doubled the cost of building the road, and this road was built on a fixed price and fixed schedule contract with the state. The dispute was thus whether the missing components constituted a breach of the Teaming Agreement. Now, there are four reasons why there should be a new trial. First, ATS sought unpaid change orders in the approximate amount of $5 million. It opened, presented evidence for a week, and rebutted for three days, and closed as a plaintiff on its affirmative claim, even though the JV tried to concede that claim and, in fact, filed a motion against itself on that claim prior to trial. The JV conceded in the full amount claimed with no conditions not imposed by law. Yes, there was one condition that the judge would not be enforced. If you were just going to list the four, I was going to let you give all four, but when you're going into the substance, I'm going to start asking questions. Yes, sir. How were you prejudiced by the district court's refusal to accept your offer of judgment, essentially? The main way is that 98% of the opening case in the first week and 100% of the three days of rebuttal at the end were prebutting and then rebutting the case in which we had the burden of proof. So what's wrong with that? That's the way it was going to be if you hadn't conceded. You had known for some time that they were going to go first, and that would be, with respect to your claims, what you call prebutting. I like that term. I hadn't heard it before. So what's the difference? You were going to face exactly that. That's true, Your Honor, but what we didn't know is that 98% of their case was going to be prebutting our claim. We thought they were going to prove their claim. We took them at their word that they had extensive evidence. Well, but I thought the reason that happened was the judge said you're not going to be able to call a witness more than once. That's true, Your Honor. If you want to call a witness on your plaintiff's claim, you better call them to counter what's going to come up in the cross-examination. That is 100% true, but there was only one witness in that category, Mindy Stackness. Well, the judge's internal case management ruling doesn't really distinguish between how many witnesses you're going to have on your own case versus counting. Yes, Your Honor, that's true. There wasn't any specification by the judge, was there, about how much time they could spend on each case? No, but all the judge's rules required is if you have a witness that's both, i.e., talking about their affirmative claim and rebutting our claim, then you call them once. But the only witness that fell into that category, as a matter of fact, was Mindy Stackness, who was a very quick, I think, 39-minute or something in that range witness. Part of it was your motion to enter judgment against you, essentially. Came just a couple weeks before trial. Things are planned. Is it clear that those witnesses were not going to be needed? The other witnesses called them their initial presentation. That those witnesses were not going to be needed for the purpose of their claim? Because you or whoever was representing your client at the time of trial essentially conceded the issue to start with, so of course you're not going to present hours and hours of testimony when the other side conceded it in opening statement. So was it clear before you decided to move to have judgment entered against you, was it clear that none of these witnesses called at the outset by plaintiff were going to be needed for the case in chief? No, I don't think it was clear, and in fact, one of the arguments that counsel So it wasn't clear that they weren't going to be needed. It was a double negative. Oh, sorry. It wasn't clear that they would only testify about the JV's claim. I'm sorry. Yeah. I'll be more concrete. Say there were ten witnesses they put on in their opening case. You say only one said anything about their claim against you as opposed to two. Two did, but one was what I call a crossover witness, meaning that person, Ms. Stekmas, testified about their claim and the JV's claim. The other witness testified only about their firm. And there were eight other witnesses they called on. Yes, sir. And none of those would have had anything to say about the plaintiff's claim? They could have, but as a factual matter, they were not called to testify about any of that, which I think really stands the traditional plaintiff's role on its head in a way that raises, I think, constitutional. But if you had not conceded at the outset, they may well have called those other eight witnesses to testify in their case in chief. And giving them two weeks' notice for a big trial is you can see why the judge said, no, I'm not going to change the order of witnesses. Yes, sir. So the fact that they ultimately didn't testify with respect to plaintiff's case in chief and just pre-rebutted, I'm not sure how forceful that argument is. Yes, sir. But it wasn't two weeks' notice. In November, the trial was in February. In November, we first raised it. In fact, ATS concedes in its brief that ATS's counsel agreed. Now, their client didn't, and so the agreement never came to fruition. But ATS's counsel agreed to this understanding. If their counsel agreed, then there can't have been any prejudice to them or they wouldn't have agreed to it, meaning that they could have rejiggered their case so that we could have gone as plaintiff. Before this agreement. Pardon me? You say because their counsel was willing to do this. Yes. Even though the client wasn't. Correct. They should have changed their entire structure of how they're going to put on their case? Well, no, I'm just saying that if counsel was comfortable with it, I think it shows that the court, jumping to the conclusion that there was prejudice, was probably incorrect. He probably should have had more of an inquiry. Their counsel agreed to, or your counsel? No, ATS's, the other party. Agreed that they would not have thought that you would be able to go first? Correct. Agreed to the stipulation that would essentially take care of their affirmative. But did they specifically agree, not just to the stipulated judgment, but did they agree that you would go first? Yes. That was one of the terms. Because at that point, they would have no affirmative case to put on. That was implicit or explicit? It was fairly implicit. I don't have their signature on a piece of paper, but they agreed subject.  I'm sorry. Fairly implicit. That's a term I have. Yeah. They agreed subject to their client's concurrence. And the only reason I'm pointing that out is not to say that I can enforce that. Their client didn't agree. I concede that. You had a settlement offer, and at least some people say there are conditions that could have affected their ability to defend against your claim. All you had to do was write a check. Why didn't you write a check? Yes, Your Honor. We could have written a check, but that's not required. There would have been no ability to enforce that judgment that we conceded in the full amount until the whole case was over. And, in fact, here, as a practical matter, there was no ability to even enforce until all the attorney's fees issues were heard. So there was no reason for us to write a check. We conceded in the full amount. Wasn't your reason was because you didn't want to write the check because you wanted to be able to control the course of the trial. Correct. And it also wasn't required. Which means it was conditional. You didn't – I mean, it was a conditional offer. Well, Your Honor, with all due respect, I don't think that's – We'll pay you, but we want to get through this trial first and do it the way we want to do it. And if we get through it that way, then we'll pay you. That's a conditional offer. Yeah. I don't think it's a – And the district court treated exactly that as a settlement offer. Well, but we moved for judgment against ourselves in the full amount. That's giving them exactly what they would have gotten. Are you talking about your Rule 54B motion? Yes, we did make a Rule 54B. Well, first of all, Rule 54B doesn't allow for independent motions for judgment. I'm not quite sure what you intended it as, but, I mean, generally you have a judgment and it's not final, and Rule 54B allows the court to make that essentially a final judgment. I'm not sure – I don't understand how you could even use it to create a judgment. That's not what the rule is for. You know, that part of it, I don't – I guess I don't even understand the nature of your claim. Are you saying it was an abuse of discretion to deny the Rule 54B motion? Yes, Your Honor, an abuse of discretion because – Which is about finality of judgment. Yes, but it does permit the court – And allows an appeal. It does permit the court to enter judgment on some, but not all, of the claims, and since we were no longer planning to contest that claim, there was no reason to dispute it. But with the court's permission – And let's not get to the other issues. Pardon? I think we – Yes. I'd like to move to the third issue, given the time left, which is the jury should have been what was not instructed on the implied covenant of good faith and fair dealing implied at every contract under Colorado law. Its absence allowed ATS to take the position that nothing in the contract's express language prevented it from hiding what it knew about the design from the JV. You said under Colorado law. Was it a Colorado pattern instruction, or was it an amalgamation of a concealment fraud claim inside of an implied covenant instruction? It wasn't the pattern instruction. It did have revisions. However, if the court wanted to give the pattern of instruction, that would have been fine with us. ATS offered no instruction of their own. But I think the remedy, if there's a problem with the instruction, is not to not give the instruction at all, because ATS admitted, and it admits in its brief hearing on appeal, that before the subcontract was final, it knew that portions of the drainage plan needed more barriers, pipes, et cetera. But the judge rejected the instruction on good faith and fair dealing because you had never raised it. It's not mentioned in the pretrial order. Is that correct? Yes. And that's true. It's not mentioned in the pretrial. So you think anything, any challenge you had to the contract could be raised at trial with an instruction, even though you hadn't put the opposing party on notice that you were going to say, well, there wasn't consideration for this reason or whatever. Do you think you can raise that aspect of your contract claim? Yes, Your Honor, because it's implied in every contract. There's no... There are lots of things that are implied in contracts. And if you haven't argued them, if you're not saying that there's lack of consideration for whatever reason, and you don't mention that in the pretrial order and bring it up for the first time in the jury instructions, the judge isn't going to give you an instruction on that point because you didn't give the other party notice of it. Well, but there was no request at the pretrial conference to give any details about any trial instructions. The judge basically said this term that's baked into every contract needs to be specifically called out. But there's no case law that stands for that. And, of course, ATS was on notice that we felt that we were tricked. And you're claiming a breach of contract, and there are ten terms in the contract, and you haven't put the opposing party on notice that you're claiming there was a breach of term two, that you can then raise that in the jury instructions? Yes, Your Honor, because that's an issue for discovery. And, in fact, ATS here knew our theory that we had been tricked into entering into subcontract because we had a negligent misrepresentation claim that got this was a surprise. They knew what our argument was. Well, is it a substitute for that claim? I'm sorry? Is it a substitute for that claim? Is that what you're telling us? You wanted to bring the implied covenant instruction to make up for getting your concealment claim tossed? No, no. I'm mentioning the concealment claim because I'm saying that ATS was certainly on notice that it was our position that they tricked us into entering into the subcontract by not disclosing what they knew about the cost growth and the drainage design that they had left out of their pre-bid original design. Are you suggesting that that's the same? Negligent concealment is the same claim? No. I'm not suggesting it's the same. I'm just saying it's related. I'm not sure how they were on notice then. If it wasn't in the pretrial order, I'm not sure how they were on notice. Well, the pretrial order just listed the claims. I mean, there were years of this.  That's what a pretrial order does, and it controls the remainder of the litigation. And if a claim is not in there, as the court said here, I'm not sure how they're on notice of it. That's what would put them on notice of it at that point. Well, but, Your Honor, there were years of discovery where issues came up about what we're reclaiming, and our claim was very clear that they knew about and did not tell us about the cost growth. That is the only reason that we wanted the instruction. And I don't think even ATS's counsel is going to come up and tell you that they were not aware of that aspect of the claim. Thank you. I see my time is just about out. I'd like to reserve whatever I have left for rebuttal. It's on orange or red, so that's how much you've gone over. Ah. Yes. I apologize. Mr. Cohn. Let me ask a question to start off. On the prejudice from, if there's any prejudice from the district courts, refusal to grant the motion to enter judgment against the plaintiff with certain exceptions. Your Honor. With certain conditions. Was your opposing counsel, I'm sorry, were you on notice weeks before the actual trial that it may be that you'd have to reorganize which witnesses were called at what time? Your Honor, thank you. Yes. May it please the Court. Let me explain the precise sequence of events regarding Flatiron's motion to have judgment entered against itself. Flatiron could have paid any time and extinguished ATS's affirmative claim, but it didn't. Flatiron might have also tried to timely confess judgment, and the time to do that would have been before the entry of the pretrial order, a judgment of might have done the trick. But Flatiron didn't do that. Flatiron also did not ask the trial court to make any exceptions or adjustments to its one witness only or each witness appears only protocol. So in November, for a trial that was scheduled to start in January, so about roughly two months before the beginning of trial, Flatiron suggested, we have a suggestion. We're not going to oppose the claim, so we will accept judgment and acknowledge our obligation to pay on condition that ATS agree that it will not enter any evidence regarding its affirmative claim, evidence which, by the way, was equally defensive in nature. ATS needed to explain all of the additional design work that it had to do, not because of any problems with the original pre-bid design, but because of mistakes and mismanagement by Flatiron. That's what the PCO, the potential change orders were all about. Flatiron directing ATS to do additional design work because, for instance, it did not discover, like it was obligated to do, that there were all kinds of pipes and utility lines buried at certain intersections. And, oh, we can't build the road the way that ATS had designed because of all the stuff. I'm sorry. I'm not answering your question. I'm just. You're right. So let me go back to the schedule. So Flatiron raises this issue in November, the issue, the proposal to accept judgment conditionally. ATS has not agreed to that condition. The condition was a nonstarter. But there was this looming problem. It seemed pretty reasonable, actually. All it was saying is we shouldn't have to pay you until our claim against you is resolved because there may be offsets. It wasn't the payment delay that was the problem. It was the evidentiary restriction that would have prevented ATS from trying the case the way that it had planned and proving its own performance, which was absolutely necessary to defend against Flatiron's quarter billion dollar claim. What term of their motion? It is on page one, I think, of both motions. The November motion for teleconference lists five conditions. And one of those conditions is that we will accept judgment, says Flatiron, in exchange for which ATS will agree or will not be allowed to present any evidence of its affirmative claim. That's what made it a settlement offer. But the problem was that Flatiron might have simply cut the check at any time and thereby extinguished ATS's claim. So we agreed, we negotiated in good faith with Flatiron to try and make the best stipulation we could subject to the understanding that we didn't have counsel's or we didn't have our client approval yet. This was all subject to client approval. And, in fact, I've brought the e-mail. The problem is that you're not putting on any evidence in support of the claim that they're willing to make a confessed judgment on. Why was that a problem for you? Because, Your Honor, the evidence of our affirmative claim, as I tried to explain, was both affirmative and also defensive in nature. Okay. So anything, any way, any evidence you want to put on to defend against their claim might have been excluded because they would argue that's really evidence in support of their counterclaim. Exactly. Especially in a four-week jury trial where we were pressed to make sure that we ended things on time. You could imagine. We're trying to present our defense against Flatiron's quarter-billion case. And we present our defensive evidence and Flatiron objects. This is covered by the stipulation, Your Honor. Running out of time. Objection sustained. Our hands could have been tied. There was no way of knowing how Flatiron's proposed stipulation would have played out over the course of trial. So you were negotiating on how to get it out? We were negotiating to get the best arrangement we could as a written stipulation subject to client approval. And at the end of the day, after we thought we had reached a, well, this is the best stipulation we can get, took it to the client, the client did not approve. But the email exchanges always say, subject to client approval, we're willing to negotiate the terms of what a stipulation might be. Of the witnesses you called at the outset of the trial, there were ten, is that correct? I think you said there were ten and two. That may have been. I don't know the number. Would all of them have been relevant to defending against the claims made? Yes, Your Honor. I believe that every single witness that ATS called did put on evidence to prove that ATS performed its contract and performed it well, which is essentially defensive evidence. We had to prove our performance in order to properly defend against Flatiron's claim. Their expert claimed that every single quantity that changed between the little 7 percent pre-bid design and the final as-built design, every single quantity change was a breach of the standard of care. Are you saying all the witnesses testified about the proposed change orders? No. Two witnesses did. Mindy Stekmast, she explained. We had a Rule 1006 evidentiary summary of the 18 change orders. She explained all of the change orders grouping. These are the sound walls. These are the utilities. She explained what additional design work ATS had to do and why ATS was entitled to be paid for it, which negated, that testimony negated Flatiron's standard of care expert. That any time there was a change, it was because we breached the professional standard of care. No. These changes were because Flatiron made mistakes and mismanaged the project. That's why it was so important that we get that testimony in. We also presented, I think it was 38 minutes of video deposition from Flatiron's 30B6 witness on this topic, Jason Breda, because we wanted to establish that all of these potential change orders were outside the scope of the subcontract, which Flatiron was arguing that we hadn't proven that, but the mere fact that they are presented as potential change orders and Flatiron never objected and said, wait a minute, we don't have to pay extra for that as part of the subcontract. Flatiron has, I believe, abandoned that in its reply brief. It's focused entirely on its, for its Rule 50 argument. Flatiron is focused entirely on the condition precedent that ATS was required to present these change orders to a design change control board. So just following up on Judge Hart's question, I think, you're saying eight witnesses, it wouldn't have mattered if you would have settled, if you would have taken the money, or the confession. Oh, no. Certainly. Well, the order of proof would have been changed completely to ATS's profound detriment. I mean, remember, we were scheduled to be in the driver's seat for days one to five, then Flatiron for nine, then the end. If we had switched the order of proof, we would have had to reschedule all of our witnesses, basically. They would have, instead of testifying at the beginning and end of the trial, they would have all had to testify in the middle. Many were coming from out of State. The point that there was defensive testimony. They were also testifying against the $200 million claim. Yes. Was that true for those eight witnesses, even if you had accepted the confession and judgment? Oh, I think absolutely. Okay. The bulk of our case was naturally, it didn't take long to present our affirmative case. We even warned Flatiron in the briefing on this motion that if Flatiron doesn't defend against it, ATS's affirmative case will probably go quite quickly. I can give you the site for that if you need it. Well, as it turned out, the case was simply essentially just exhibit that went through the change orders and how much was owed for what work. Is that? That was ATS's affirmative claim for $5.3 million. Is there anything else you needed beyond that? Yes. Well, Flatiron argues that we needed to negate its affirmative defense. Remember, Flatiron was raising as an affirmative defense failure to satisfy condition precedent, namely submission to the Design Change Control Board. But Flatiron had the burden of proof it was an affirmative defense. It was Flatiron that needed to put in evidence that there were potential change orders that could have been submitted. Namely, what Flatiron should have done is establish, put on evidence to establish the date that the DCCB was formed and then establish when it began, Flatiron made the decision to shelve that process. Why do you say that's an affirmative defense? I thought to get paid on the change order, it had to be approved by this body. No. It had to be submitted to the body. The DCCB. But most of them weren't even submitted. That's right. Because the DCCB did not get underway in either party. So why is that issue an affirmative defense rather than a requirement for you to show that you owed the money? Because you have to do certain things before you get paid. That's right. Submission to the DCCB was a condition precedent. A precedent for your getting paid. That's right. You have to prove that that was satisfied. That condition was satisfied. Well, we did prove it as a matter of fact. Okay. But you're saying you didn't have to. That was their affirmative defense. Because it was an affirmative defense. The proponent of the affirmative defense has the burden. This is a point that we did not develop as well as we might have in our answer brief. I must be asking this poorly. Why is it an affirmative defense to say they didn't go through the steps they needed to go through to get paid? Why isn't that their burden to prove that? Because it is a failure to satisfy a condition precedent. The case law defines failure to satisfy a condition precedent as an affirmative defense to a claim for breach of contract. Okay. What were the mechanics of the DCCB? Who was the one that was supposed to submit? ATS was required to submit to the DCCBA once it was constituted, and we could. But the idea is that the DCCB acts as a type of mediation panel. The idea is that instead of allowing disputes, which often arise in these projects, to fester and turn into litigation, you appoint two panel members. They elect the umpire. You take the problems to the DCCBA. The DCCB gives you a ruling in real time. It's not binding. It's like mediation, but it's a requirement that you submit, the idea being that it keeps the design process moving instead of allowing disputes to fester. How does waiver fit into this, then? That fits in quite nicely, as Judge Martinez ruled correctly in his Rule 50 order, rejecting Flatiron's claim, that failure to establish the DCCB was a waiver and so none of the potential change orders that were submitted before the DCCB was constituted could have gone because Flatiron did not do its part in constituting it. I'm sorry. Go ahead. But also I was at shelving the DCCB process. Is the DCCB is that once it's selected, those members remain the same for every proposed change order dispute? Yes. It's just a single board. And it would have remained through the entire process except for the fact that there's waiver on the back side as well. Flatiron's witness testified that once it became clear that this matter would go to litigation, it decided to shelve the process because we're going to try it anyway, and Flatiron anticipated that its much larger claim would act as a set-off. I'm wondering about the – I'm sorry. No, after you. The district court, you said, found there was a waiver, but I wonder the subcontract that looked like prohibited generalized waivers, you would have had to show an unequivocal act showing waiver. Well, in that case you could. Is that an error? No, that is not an error. What was the unequivocal act showing the waiver? Well, the unequivocal act, well, the PCO submission that the district court focused on had to do with the I-25 interchange. That's one, are you familiar, where we did the work, submitted, and Flatiron got ATS's money and kept it in its own pocket. I understand. Yeah, that was a waiver. What was the unequivocal act that was the waiver of that process, the PCCB process? The trial court found that that could be applied to other PCOs. Plus, if it's not waivered, then it's prevention. If Flatiron does not do There was no unequivocal act is what you're saying. It doesn't sound like it. No, it is an unequivocal act, Judge Martz. To fail to constitute the board that you claim ATS was required to submit PCOs to, that's unequivocal. It was a prevention, and that's absolutely unequivocal. What does that mean, fail, prevent it? How did it prevent it? The DCCB has to exist. It has to be constituted in order for ATS. In order for that to happen, both sides have to nominate their representative on the DCCB. And did ATS nominate? Both sides were at fault here. Jason Breda's deposition testimony acknowledged that Flatiron did not nominate its DCCB representative either until very late in the process. That's why the board never got off the ground until very late and was then shelved right after. Your Honor, I'm out of time. We ask that the Court affirm this matter, and ATS will present its motion for attorney fees afterwards per Rule 39.2. Thank you, Counsel. 30 seconds. Thank you. Thank you. Just two or three quick points. Point one, the DCCB was set up. In fact, it denied at least one of the change orders. So it's not true that it was never set up. Point two, ATS complains of the condition about introducing evidence. But as pointed out in our brief, that condition was withdrawn when we made our motion, our Rule 54 motion to the Court, and we raised it as a separate evidentiary motion for the Court. Point three, Section 1.6 of the teaming agreement was construed in opening and closing by ATS that they could withhold information. We were unable to rebut that without an instruction to the jury telling them about good faith and fair dealing, which even if not raised in a timely way in the early order in the Court, leave should have been granted liberally. Thank you. Thank you. Thank you, Counsel. The case is submitted, and Counsel are excused.